# In the United States Bankruptcy Court
## for the
## Southern District of Georgia
### Savannah Division

|  |  |  |
|---|---|---|
| In the matter of: | ) | Chapter 11 Case |
| WILLIAM H. TROUT, JR. | ) | Number <u>09-40748</u> |
| *Debtor* | ) |  |
|  | ) | **FILED** |
| JULIE J. TROUT | ) | Samuel L. Kay, Clerk<br>United States Bankruptcy Court<br>Savannah, Georgia<br>By lbarnard at 5:21 pm, May 15, 2009 |
| *Movant* | ) |  |
| v. | ) |  |
| WILLIAM H. TROUT, JR. | ) |  |
| *Respondent* | ) |  |

## MEMORANDUM AND ORDER
## ON MOTION FOR RELIEF FROM STAY

Debtor's Chapter 11 was filed on April 9, 2009. At that time he was incarcerated in the Bryan County, Georgia, jail pursuant to an order dated April 6, 2009, by the Honorable D. Jay Stewart, Judge of the Superior Court of the Atlantic Judicial Circuit of Georgia, finding that Debtor was in willful contempt of Judge Stewart's earlier December 3, 2008, order. *See* Exhibit 5. The filing of his Chapter 11 was brought to Judge Stewart's attention in some manner, and he thereafter entered an order releasing Debtor from custody. *See* Exhibit 6. In that order, Judge Stewart acknowledged that the automatic stay had been

AO 72A
(Rev. 8/82)

triggered by the filing of the bankruptcy petition and that Debtor's ex-wife was free to seek relief from the automatic stay as provided by law. Judge Stewart further held:

> The determination by this Court that the Defendant remains in willful contempt is not disturbed by this Order. The penalty, however, is suspended as required by law.

After the Debtor's release from the Bryan County jail, Julie J. Trout, Debtor's ex-wife, filed the Motion which is presently before this Court and which was tried on May 11, 2009.

The domestic matter between Movant and Debtor has a long and arduous history. Movant's divorce action was the subject of a temporary custody and visitation order entered on May 3, 2007, by the Honorable Robert L. Russell, III, Judge of Superior Court of Bryan County, Georgia. That order reflects that these temporary issues were litigated on March 14 and April 23, 2007. *See* Exhibit 1. The case remained pending in the Superior Court of Bryan County, Georgia, and thereafter a five day jury trial was conducted in April 2008. After the trial, on May 30, 2008, *nunc pro tunc* to May 1, 2008, Judge Stewart entered a Judgment and Decree of Divorce. *See* Exhibit 2. Again, the provisions of the Judgment and Decree are extensive. They dealt comprehensively with custody and visitation issues, child support, medical insurance payments, alimony payments, and a property division provision dealing with extensive real and personal property that was part of the marital estate. The decree also provided for debt division under which the husband would pay certain debts

and the wife would pay others.

Debtor appealed that Judgment to the Georgia Supreme Court. During the pendency of that appeal, Debtor was cited for contempt and hearings were conducted in June and October of 2008, events which led to the Order on Plaintiff's Motions for Contempt. *See* Exhibit 3. In that order, Judge Stewart reviewed the history of the case, applicable law, and made certain findings of fact. He concluded that Debtor had failed to comply with the temporary order in sixteen separate instances. He then analyzed whether Debtor's failure to comply was willful or was without justification. In his analysis, he relied on extensive financial information and concluded

> [T]he amount of cash necessary to meet these obligations, which included the obligations imposed by the Temporary Order, totals $456,480 per year. Defendant's cash flow based on his deposits into six bank accounts for a one year period totaled $643,501.91. This reflects an excess cash flow of $187,021.91 available to Defendant to meet unanticipated or additional expenses not reflected on his Financial Affidavit.
>
> Additional evidence presented by the Plaintiff establishes that Defendant also had assets at his disposal which could have been sold to satisfy his obligations under the Temporary Order.
>
> Id. at pgs. 7-8.

On the basis of this thorough analysis, Judge Stewart held:

>Defendant (1) had more cash flow than expenses; (2) could sell property and receive funds to relief himself of debt; and (3) considered himself sufficiently credit-worthy to make an offer to purchase his business partner's interest. Accordingly, the Court finds that the Defendant had the ability to pay all amounts awarded under the Temporary Order to the Plaintiff and that his failure to do so was unjustified and willful.

Judge Stewart found that Debtor had failed to comply with the Temporary Order resulting in arrearages of $258,561.89 and that as a result of his conduct, there had been a loss of equity in property awarded to the wife in the amount of $285,000.00. He concluded:

>It is apparent that Dr. Trout has violated the spirit and intent of the Temporary Order. He has deliberately failed to pay his obligations to the Plaintiff while protecting his own corporate assets. He has withheld Plaintiff's salary from his dental practice. He has failed to pay Plaintiff's car payments, but drives a brand new Cadillac Escalade purchased by his practice.

Having found Debtor in "willful contempt," Judge Stewart ordered his incarceration on December 31, 2008, but provided that he could purge the contempt by

1. Paying in full or refinancing the Wachovia line of credit secured by 269 Montauk Drive, Richmond Hill, Georgia, and

2. Paying to the Plaintiff the $50,000 due and payable on or before December 31, 2008, in certified funds

> to be delivered to the Sheriff of Bryan County, Georgia, no later than 4:00 p.m. on said date.

He was also ordered to pay $4,500.00 per month to retire the support arrearages and to convey to Plaintiff" by December 31, 2008, recordable Deeds to Secure Debt on every parcel of property" he owned and "upon the sale of any property owned by Defendant jointly or individually, the Plaintiff will receive 50% of the net proceeds of any such sale." Id. at pg. 10.

The Debtor filed a Motion for Reconsideration of that Order which was heard on February 17, 2009, and denied. The Court allowed Debtor until February 27, 2009, to comply with the previous Order and the deadlines set therein. Debtor then filed an application for discretionary review of that Order to the Georgia Supreme Court which was denied on March 30, 2009. At that point, the contempt issue came back before the Superior Court on April 1. *See* Exhibit 5. On that date the Court entered an Amended Income Deduction Order (*See* Exhibit 4) finding

> Payment of previously owed support is behind in the amount of $543,561.89 as of November 10, 2008. The amount of $4,500 shall be withheld each MONTH, to be deducted in approximate equal amounts each pay period until the amount of unpaid support is paid in full.
>
> Id. at § B.

AO 72A
(Rev. 8/82)

5

The Court thereafter executed the order of incarceration. *See* Exhibit 5.

The present Motion for Relief seeks authority for Movant to return to the Superior Court of Bryan County, Georgia, in order to have that court enforce its previous orders. Movant argues in part that the filing of this Chapter 11 is a transparent attempt to frustrate and delay the legitimate processes of the State Court system in requiring adherence to its orders entered in domestic relations cases and that constitutes "cause" for granting stay relief.

Dr. Trout, Debtor, takes the position that there are non-divorce purposes for the filing of the bankruptcy case focusing primarily upon his real estate development interests, which are extensive, and upon the existence of a tax lien of approximately $90,000.00 asserted by the State of Georgia for unpaid taxes for the years 2005, 2006 and 2007, which it was attempting to enforce by levy in the fall of 2008. Debtor has filed amended returns which he believes if accepted by the State would result in there being no liability to the State but he also argues that, if the State Department of Revenue continues its levy activity, he is at risk in losing property in which there is substantial equity.

During the time Debtor was seeking review of the Court's December 2008 Contempt Order, Debtor sold his dental office and obtained $50,000.00 in proceeds without reporting to Movant the fact that a closing was going to occur as required by the Order. He also failed to remit to her half of those proceeds as that Order required. He remarried in

February 2009 and conveyed by quit claim deed a vacant lot on East Victory Drive in Savannah, Chatham County, Georgia, to his new wife. He now lives with her in a home she owns on the Ogeechee River in Bryan County for which she paid $750,000.00, an amount which was financed by the owners who were "clients and friends" of Debtor. They financed 100% of the purchase price for her on what are clearly unconventional, generous terms.

After consideration of the facts, I conclude that the Motion for Relief from Stay should be granted. In Carver v. Carver, the Eleventh Circuit Court of Appeals applied the "domestic relations exception" to federal jurisdiction in holding that a bankruptcy court should have abstained from hearing an action brought by a debtor against his former wife and her counsel for violation of the automatic stay of 11 U.S.C. § 362(a). The Court stated that, "[w]hen requested, such relief should be liberally granted in situations involving alimony, maintenance, or support in order to avoid entangling the federal court in family law matters best left to state court." 954 F.2d 1573, 1578 (11th Cir. 1992). "Relief is liberally granted out of concern that bankruptcy will be used as a weapon in an ongoing battle between former spouses." Fraser v. Arnal (In re Arnal), 2003 WL 21911212, at *2 (Bankr.S.D.Ga. June 10, 2003)(Davis, J.). Further, it is essential that "[t]he bankruptcy code . . . not be used to deprive dependents, even if only temporarily, of the necessities of life." Carver, 954 F.2d at 1579(citing Caswell v. Lang, 757 F.2d 608, 610 (4th Cir. 1985)).

The weight of authority in this district indicates that Carver is still good law and has not been limited. See e.g., In re Chadwick, 296 B.R. 876, 883 (Bankr.S.D.Ga.

and has not been limited. *See e.g.,* In re Chadwick, 296 B.R. 876, 883 (Bankr.S.D.Ga. 2003)(Davis, J.); In re Arnal, 2003 WL 21911212, at *3 and cases cited therein; *see* Cummings v. Cummings, 244 F.3d 1263, 1267 (11th Cir. 2001)("We previously have noted that '[i]t is appropriate for bankruptcy courts to avoid incursions into family law matters out of consideration of court economy, judicial restraint, and deference to our state court brethren and their established expertise in such matters.'").

Based on this binding precedent of the United States Court of Appeals for the Eleventh Circuit and precedents established by my previous orders, I agree with the Movant's position that "cause" exists for granting stay relief. Debtor has vigorously litigated his divorce and the financial obligations arising therefrom for over two years. He has availed himself of every possible opportunity to seek review and reversal of obligations imposed both by the temporary order and the final decree. He has been hauled into court on more than one occasion and cited for contempt. He was found to be in willful contempt. He has been provided with a carefully crafted and reasonable repayment schedule by the Superior Court of Bryan County in order to allow him to purge himself of that contempt. He attempted to have that Order overturned, and during the pendency of that effort, he acted in ways that clearly violated the spirit, if not the obligations imposed by that order. He sold real estate and kept the money. His contempt for the legitimate processes and orders of the Superior Court of Bryan County is palpable. *See* In re Arnal, 2003 WL 21911212, at *4 (granting relief from stay in part because debtor defaulted on numerous occasions on his obligations to his ex-spouse and had been cited for contempt on several occasions).

The findings of contempt by the Superior Court are only exacerbated by his activities following the entry of that Order by failing to remit proceeds to Movant, conveying real estate to his new wife, and filing this bankruptcy case when he was incarcerated for good and compelling reasons. His explanation that there are non-divorce reasons for the filing is laughable. The only specific example of a compelling non-divorce reason for filing the case has to do with a $90,000.00 tax lien which at one point was subject to active enforcement efforts by the State of Georgia. However, that activity was in place prior to the time Judge Stewart entered the contempt order in December of 2008. It is not a new financial set back. The Debtor then filed an amended return, the result of which caused the suspension of those collection activities by the state and there is no evidence to suggest that they will ever resume. To suggest that the filing of this case is necessary to protect his equity in property against unreasonable levy by the state is absurd.

If ever a case cried out for an immediate grant of stay relief so that the legitimate and compelling interest of the judicial system of the State of Georgia can be vindicated, this is it. As Judge Stewart so ably put it, Debtor has acted at all times before and since the entry of the contempt order to "deliberately fail to pay his obligations to the Plaintiff while protecting his own corporate assets." That time has ended. The Motion is granted. Movant is free to proceed with her state law remedies.

In addition to the usual service of orders entered by this Court, I direct the Clerk and my staff to send a copy of this order directly to the Honorable D. Jay Stewart,

Judge, Superior Court, Atlantic Judicial Circuit of Georgia, by the most expeditious means available.

_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia
This 15th day of May, 2009.